**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                                                 :
ANNA BEER, *et al.*,                                             :   Index Nos.: 12 MISC 00020
                                                                 :                12 MISC 00021
                                  Petitioners,                   :
                                                                 :
          v.                                                     :
                                                                 :
ISLAMIC REPUBLIC OF IRAN                                         :
and IRANIAN MINISTRY OF                                          :
INFORMATION AND SECURITY,                                        :
                                                                 :
                                  Respondents.                   :
                                                                 :
-----------------------------------------------------------------x
                                                                 :
JASON KIRSCHENBAUM, *et al.*,                                    :
                                                                 :   Index Nos.: 12 MISC 00019
                                  Petitioners,                   :                12 MISC 00022
                                                                 :
          v.                                                     :
                                                                 :
ISLAMIC REPUBLIC OF IRAN                                         :
and IRANIAN MINISTRY OF                                          :
INFORMATION AND SECURITY,                                        :
                                                                 :
                                  Respondents.                   :
                                                                 :
-----------------------------------------------------------------x

**PETITIONERS' MEMORANDUM OF LAW IN SUPPORT OF JOINT APPLICATION**
**PURSUANT TO 28 U.S.C. § 1610(c) FOR ORDER AUTHORIZING EXECUTION**

                              **STROOCK & STROOCK & LAVAN LLP**
                              180 Maiden Lane
                              New York, New York  10038
                              (212) 806-5400

                              *Attorneys for Petitioners*

Of Counsel:   Curtis C. Mechling
              James L. Bernard
              Benjamin Weathers-Lowin

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................2

A.    The Beer Judgment Creditors ...................................................................................2

B.    The Kirschenbaum Judgment Creditors...................................................................5

C.    Prior § 1610(c) Orders of this Court Authorizing
Petitioners to Execute Upon Other Iranian Assets...................................................7

D.    The Blocked Assets Against Which Petitioners
Now Seek to Execute in Satisfaction of Their Judgments.......................................7

ARGUMENT

PETITIONERS ARE ENTITLED TO AN ORDER PURSUANT TO 28 U.S.C. § 1610(c)
AUTHORIZING PETITIONERS TO EXECUTE AGAINST THE BLOCKED ASSETS .........10

A.    The Blocked Assets Are Subject to Execution Pursuant to 28 U.S.C. § 1610,
Including § 201 of TRIA........................................................................................10

B.    A Reasonable Period of Time Has Elapsed Following Entry of Petitioners'
Judgments and the Giving of Notice Required Under 28 U.S.C. § 1608(e).....................16

CONCLUSION.........................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bakhtiar v. Islamic Republic of Iran,*
 Civ. Act. No. 02-00092 (HHK) (D.D.C. 2008) .........................................................18

*Ben-Rafael v. Islamic Republic of Iran,*
 540 F. Supp. 2d 39 (D.D.C. 2008) ............................................................................18

*Bennett v. Islamic Republic of Iran,*
 507 F. Supp. 2d 117 (D.D.C. 2007) ..........................................................................18

*Blais v. Islamic Republic of Iran,*
 459 F. Supp. 2d 74 (D.D.C. 2006) ............................................................................18

*Campuzano v. Islamic Republic of Iran,*
 281 F. Supp. 2d 258 (D.D.C. 2003) ..........................................................................18

*Daliberti v. Republic of Iran,*
 146 F. Supp. 2d 19 (D.D.C. 2001) ............................................................................18

*Ferrostaal Metals v. S.S. Lash Pacifico,*
 652 F. Supp. 420 (S.D.N.Y. 1987) ...........................................................................17

*Gadsby & Hannah v. Socialist Republic of Romania,*
 698 F. Supp. 483 (S.D.N.Y. 1988) ...........................................................................17

*Haim v. Islamic Republic of Iran,*
 425 F. Supp. 2d 56 (D.D.C. 2006) ............................................................................18

*Holland v. Islamic Republic of Iran,*
 496 F. Supp. 2d 1 (D.D.C. 2005) ..............................................................................18

*In re 650 Fifth Ave. & Related Properties,*
 *08 Civ. 10934 (KBF), 2012 WL 3070028 (S.D.N.Y. July 27, 2012)* ............................... passim

*In re 650 Fifth Avenue and Related Properties,*
 777 F.Supp.2d 529 (S.D.N.Y. 2011)...........................................................................9

*Ned Chartering & Trading, Inc. v. Republic of Pakistan,*
 130 F. Supp. 2d 64 (D.D.C. 2001) ............................................................................17

*Peterson v. Islamic Republic of Iran,*
 515 F. Supp. 2d 25 (D.D.C. 2007) ............................................................................18

*Reiger v. Islamic Republic of Iran*,
  281 F. Supp. 2d 87 (D.D.C. 2003) ......................................................................... 18

*Weininger v. Castro*,
  462 F.Supp.2d 457 (S.D.N.Y. 2006) ..................................................................... 10

*Weinstein v. Islamic Republic of Iran*,
  609 F.3d 43 (2d Cir. 2010) ............................................................................. 10, 13

STATUTES

22 U.S.C. § 8701, *et seq* ........................................................................................ 11

28 U.S.C. § 1602, *et seq* .......................................................................................... 1

28 U.S.C. § 1605(A) ........................................................................................ 3, 6, 11

28 U.S.C. § 1605(a)(7) ................................................................................. 2, 3, 5, 11

28 U.S.C. § 1608(a)(4) ...................................................................................... 3, 4, 6

28 U.S.C. § 1608(e) ................................................................................. 2, 7, 17, 19

28 U.S.C. § 1610 ............................................................................................ 1, 2, 10

28 U.S.C. § 1610(c) ................................................................................... passim

28 U.S.C. § 1963 ........................................................................................... 4, 6, 7

H.R. Rep. 1487, 94th Cong., 2d Sess. 1, 30 (1976), reprinted in 1976 U.S. Code Cong. &
  Admin. News 6604, 6629 ...................................................................................... 18

CPLR § 5230 ............................................................................................................ 1

CPLR § 5232 ............................................................................................................ 1

CPLR Art. 52 ........................................................................................................... 1

Export Administration Act of 1979, § 6(j), 50 U.S.C.App. § 2405(j) ........................... 13

Iran Threat Reduction and Syria Human Rights Act of 2012, § 502(e)(2), Pub. L. No.
  112-158, 126 Stat. 1214 (2012) ........................................................................... 11

Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 (2002) ...................11

USA Patriot Act of 2001, § 311 , Public Law 107-56 ................................................ 13

Terrorism Risk Insurance Act of 2002 § 201 ........................................................ passim

## Other Authorities

31 C.F.R. Part 560..................................................................................................13

31 C.F.R. § 560, App. .............................................................................................8

73 Fed. Reg. 251 (December 31, 2008) ..................................................................15

Finding That the Islamic Republic of Iran Is a Jurisdiction of Primary Money Laundering
  Concern,76 Fed. Reg. 72756 (Nov. 25, 2011) .................................................13

E.O. 13382 .........................................................................................................15, 16

E.O. 13599 ..................................................................................................... passim

E.O. 13599, § 7(d)..................................................................................................12

E.O. 13599, § 1(a)..................................................................................................16

Fed. R. Civ. P. 69(a) ................................................................................................1

*State Sponsors of Terrorism Overview (April 30, 2008), available at*
  http://www.state.gov/j/ct/rls/crt/2007/103711.htm................................................13

Treasury, http://www.treasury.gov/resource-center/faqs/Sanctions/Pages/answer.aspx
  (last visited Oct. 16, 2012) ..............................................................................16

U.S. Congressional Research Service. *Suits Against Terrorist States by Victims of
  Terrorism* (RL31258; May 1, 2008) ..................................................................4

## PRELIMINARY STATEMENT

Petitioners Anna Beer, Harry Beer (on his own behalf and as Administrator of the Estate of Alan Beer), Estelle Carroll, and Phyllis Maisel (collectively, the "Beer Judgment Creditors"); and Jason Kirschenbaum, Isabelle Kirschenbaum (on her own behalf and as Executrix of the Estate of Martin Kirschenbaum), Joshua Kirschenbaum, David Kirschenbaum, and Danielle Teitlebaum (collectively, the "Kirschenbaum Judgment Creditors," and together with the Beer Judgment Creditors, the "Judgment Creditors" or "Petitioners"), by their undersigned counsel, submit this memorandum of law in support of their joint, *ex parte* application, made pursuant to 28 U.S.C. § 1610(c), for an Order authorizing Petitioners, judgment creditors of the Islamic Republic of Iran ("Iran") and the Iranian Ministry of Information and Security ("MOIS"), to garnish and execute upon certain specifically-identified, non-immune assets of Iran that are located within this Court's jurisdiction (the "Blocked Assets"), and directing the Clerk of Court to issue writs of execution, accordingly, in each of the above-captioned actions.

As more fully demonstrated herein, the Blocked Assets are subject to execution in satisfaction of Petitioners' judgments against Iran pursuant to, *inter alia*, 28 U.S.C. § 1610, including § 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA"), codified as a note thereto, and various provisions of Article 52 of the New York Civil Practice Law and Rules ("CPLR"), as made applicable under Federal Rule of Civil Procedure 69(a).  Whereas New York State execution law would ordinarily permit Petitioners to seek writs of execution directly from the Clerk of Court and levy such writs upon the property of their judgment debtor pursuant to CPLR §§ 5230 and 5232, the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq.*, mandates that any execution against property of a foreign sovereign state, agency or instrumentality be court-ordered upon a judicial determination that a reasonable period of time

has elapsed following entry of the judgment(s) sought to be satisfied and the giving of any notice required under § 1608(e) of the FSIA.

As demonstrated herein, this Court (Wood, J.) already determined that a reasonable period of time has elapsed following entry of Petitioners' respective judgments against Iran and the giving of adequate notice thereof pursuant to § 1608(e). Based upon such determination, this Court authorized Petitioners to execute against certain other, unrelated Iranian assets within the Court's jurisdiction, which assets were the subject of a prior application pursuant to § 1610(c). As with their prior application, Petitioners have herein made a *prima facie* showing that the Blocked Assets now sought to be executed upon are non-immune and subject to execution in satisfaction of their judgments against Iran pursuant to, *inter alia*, § 1610, including § 201 of the TRIA. Accordingly, the Court should grant Petitioners' application.

## BACKGROUND

### A. The Beer Judgment Creditors

The Beer Judgment Creditors seek to enforce money judgments obtained against Iran and MOIS in district court actions captioned *Beer, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 06-473 (RCL) (D.D.C.) ("*Beer I*"), and *Beer, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 08-1807 (RCL) (D.D.C.) ("*Beer II*") (together, the "Underlying *Beer* Actions"), which arose from the Iran-sponsored June 11, 2003, suicide bombing of a bus in Jerusalem, Israel, by members of the terrorist organization Hamas (a/k/a Palestinian Islamic Resistance Movement). Declaration of Curtis C. Mechling, dated October 22, 2012 ("Mechling Decl.") at ¶¶ 2, 5. The attack killed 17 passengers, including Alan Beer, a United States citizen who, at that time, was living in Israel. *Id.* at ¶ 5.

In March 2006, the Beer Judgment Creditors commenced *Beer I* by filing a complaint against Iran and MOIS pursuant to, *inter alia*, then-enacted 28 U.S.C. § 1605(a)(7), commonly

referred to as the "terrorism exception" to FSIA immunity,[1] as well as various state-law bases for

holding Iran and MOIS vicariously liable for wrongful death, conscious pain and suffering, and

intentional infliction of emotional distress in connection with Alan Beer's murder. *Id.* at ¶ 6.

Despite the willful default of both defendants, the *Beer I* court held an evidentiary hearing on

liability, at which the Beer Judgment Creditors established their claims and right to relief. *Id.* at

¶¶ 7-9. Based on all of the evidence presented at that evidentiary hearing, the Honorable Royce

C. Lamberth, United States District Judge, made findings of fact and conclusions of law and,

consistent with such findings and conclusions, entered default judgment in favor of the Beer

Judgment Creditors and against Iran and MOIS in August 2008 in the amount of $13 million in

compensatory damages (the "*Beer I* Judgment"). *Id.* at ¶ 9, Exs. 1, 2.

      Shortly after entry of the *Beer I* Judgment, the Beer Judgment Creditors commenced *Beer

II*, pursuant to then-recently-enacted 28 U.S.C. § 1605(A), as permitted under § 1083(c) of the

National Defense Authorization Act ("NDAA") for the Fiscal Year 2008. Mechling Decl. at

¶¶ 10. Although defendants Iran and MOIS again defaulted in *Beer II,* the court took judicial

notice of the evidence presented in *Beer I* and, based upon such evidence, made its own findings

of fact and conclusions of law and, consistent with such findings and conclusions, entered a

default judgment against Iran and MOIS in the amount of an additional $300 million in punitive

damages (the "*Beer II* Judgment," and together with the *Beer I* Judgment, the "Beer

Judgments"). *Id.* at ¶ 10, Ex. 3.

      In accordance with 28 U.S.C. §§ 1608(a)(4) and (e), the Beer Judgment Creditors duly

served copies of the Beer Judgments and notices of entry thereof, in both English and Farsi

---

[1]  Formerly-enacted 28 U.S.C. § 1605(a)(7), *repealed,* and its statutory successor, § 1605A, abrogate foreign sovereign immunity for officially-designated state sponsors of terrorism and agencies and instrumentalities of such states, where such a state, agency or instrumentality commits an act of terrorism, or provides material support for the commission of such an act, and the act results in the death or personal injury of, *inter alia,* a United States citizen.

translations, upon Iran and MOIS via diplomatic channels with the assistance of the United States Department of State. *Id.* at ¶¶ 11-14, Exs. 4, 5, 6, 7. On or about December 12, 2011, the United States Department of State notified the Clerk of Court of the United States District Court for the District of Columbia that service upon Iran and MOIS had been effected in the Underlying *Beer* Actions when copies of the Beer Judgments and accompanying papers were delivered to the Iranian Ministry of Foreign Affairs with the assistance of the Foreign Interests Section of the Embassy of Switzerland in Tehran, Iran, under cover of diplomatic notes numbered 1039-IE, 1040-IE, 1041-IE and 1042-IE, on November 2, 2011. *Id.*

Pursuant to 28 U.S.C. § 1963, the Beer Judgment Creditors then registered the Beer Judgments in the Southern District of New York on January 23, 2012. *Id.* at ¶ 15, Ex. 8.

Almost a full year has passed since Iran and MOIS received formal notice of the Beer Judgments and, to date, neither defendant has acknowledged such judgments or given any indication that they intend to voluntarily satisfy such judgments. Mechling Decl. at ¶¶ 18-19. Notably, over the last several decades, no less than 40 default judgments have been entered against Iran in favor of American victims of terrorism, and Petitioners' counsel is not aware of a single instance in which Iran has acknowledged or voluntarily paid any such debt. *See* U.S. Congressional Research Service. *Suits Against Terrorist States by Victims of Terrorism* (RL31258; May 1, 2008), by Jennifer K. Elsea at 65, 67-72 (*available at* http://fas.org/sgp/crs/terror/RL31258.pdf) [hereinafter *CRS Report*](noting that while United States courts have awarded more than $18.5 billion against state sponsors of terrorism, the defendant in the largest number of suits being Iran, most claimants have been left to compete with each other to claim blocked assets).

**B.  The Kirschenbaum Judgment Creditors**

The Kirschenbaum Judgment Creditors seek to enforce money judgments obtained against Iran and MOIS in district court actions captioned *Kirschenbaum, et al. v. Islamic Republic of Iran et al.*, Civil Action No. 03-1708 (D.D.C.) ("*Kirschenbaum I*"), and *Kirschenbaum, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 08-1814 (RCL) (D.D.C.) ("*Kirschenbaum II*") (together, the "Underlying *Kirschenbaum* Actions"), which arose from the Iran-sponsored December 1, 2001, suicide bombing on Ben Yehuda Street in Jerusalem, Israel, perpetrated by members of the terrorist organization Hamas.  Mechling Decl. at ¶¶ 3, 20. The terrorist bombing killed 20 individuals and wounded over one hundred others, including Jason Kirschenbaum, a United States citizen.  *Id.* at ¶ 20.

In August 2003, the Kirschenbaum Judgment Creditors commenced *Kirschenbaum I* by filing a complaint against Iran and MOIS pursuant to, *inter alia*, then-enacted 28 U.S.C. § 1605(a)(7) and various state-law bases for holding Iran and MOIS vicariously liable for wrongful death, conscious pain and suffering, and intentional infliction of emotional distress in connection with the injuries sustained by Jason Kirschenbaum in the December 1, 2001, attack. *Id.* at ¶ 21.  Despite the willful default of both defendants, the *Kirschenbaum I* court held an evidentiary hearing on liability, at which the Kirschenbaum Judgment Creditors established their claims and right to relief.  *Id.* at ¶¶ 22-24.  Based on all of the evidence presented at that evidentiary hearing, Judge Lamberth made findings of fact and conclusions of law and, consistent with such findings and conclusions, entered a default judgment in favor of the Kirschenbaum Judgment Creditors and against Iran and MOIS in the amount of $13,750,000 in compensatory damages (the "*Kirschenbaum I* Judgment").  *Id.* at ¶ 24, Exs. 9, 10.

Shortly after entry of the *Kirschenbaum I* Judgment, the Kirschenbaum Judgment Creditors commenced *Kirschenbaum II* pursuant to then-recently-enacted 28 U.S.C. § 1605(A),

as permitted under § 1083(c) of the NDAA for the Fiscal Year 2008.  Mechling Decl. at ¶ 25.

Although defendants Iran and MOIS again defaulted, the *Kirschenbaum II* court took judicial

notice of evidence presented in *Kirschenbaum I* and, based upon such evidence, made its own

findings of fact and conclusions of law and, consistent with such findings and conclusions,

entered a default judgment against Iran and MOIS in the amount of an additional $300 million in

punitive damages (the "*Kirschenbaum II* Judgment," and together with the *Kirschenbaum I*

Judgment, the "Kirschenbaum Judgments").  *Id.* at ¶ 25, Ex. 11.

      In accordance with 28 U.S.C. § 1608(a)(4) and (e), the Kirschenbaum Judgment

Creditors duly served copies of the Kirschenbaum Judgments and notices of entry thereof, in

both English and Farsi translations, upon Iran and MOIS via diplomatic channels with the

assistance of the United States Department of State.  *Id.* at ¶¶ 26-29, Exs. 12, 13, 14, 15.  On or

about December 12, 2011, the United States Department of State notified the Clerk of Court of

the United States District Court for the District of Columbia that service upon Iran and MOIS

had been effected in the Underlying *Kirschenbaum* Actions when copies of the Kirschenbaum

Judgments and accompanying papers were delivered to the Iranian Ministry of Foreign Affairs

with the assistance of the Foreign Interests Section of the Embassy of Switzerland in Tehran,

Iran, under cover of diplomatic notes numbered 1043-IE, 1044-IE, 1045-IE and 1046-IE, on

November 2, 2011. *Id.*

      Pursuant to 28 U.S.C. § 1963, the Kirschenbaum Judgment Creditors then registered the

Kirschenbaum Judgments in the Southern District of New York on January 23, 2012.  *Id.* at

¶ 30, Ex. 16.

      Like the Beer Judgments, Iran and MOIS received formal notice of the Kirschenbaum

Judgments almost a full year ago and, to date, neither defendant has acknowledged such

judgments or given any indication that they intend to voluntarily satisfy such judgments.

Mechling Decl. at ¶¶ 33-34.

### C. Prior § 1610(c) Orders of this Court Authorizing Petitioners to Execute Upon Other Iranian Assets

By concurrently-issued Orders,[2] dated March 29, 2012, this Court (Wood, J.) granted the

Beer Judgment Creditors' and Kirschenbaum Judgment Creditors' respective applications for

orders pursuant to § 1610(c), authorizing them to satisfy their respective judgments against Iran

by executing upon certain other Iranian property interests within the Court's jurisdiction and at

issue in an unrelated proceeding. *Id.* at ¶¶ 16, 31. Upon consideration of Petitioners' prior

applications, Judge Wood, sitting in Part 1 of this Court, determined that a reasonable period of

time had elapsed since notices of Petitioners' judgments were provided to Iran and MOIS

pursuant to § 1608(e), and that Petitioners had otherwise demonstrated each of the requirements

under § 1610(c). *Id.* Accordingly, Judge Wood ordered, *inter alia*, that Petitioners' prior

application be granted with respect to the property therein identified and, in accordance with §

1610(c), directed the Clerk of Court to issue writs of execution with respect to such property for

Petitioners' respective judgments against Iran on record with the Court. *Id.*

### D. The Blocked Assets

Petitioners now seek to execute their respective judgments against the Blocked Assets,

which consist of various real and personal property interests of Iran that are the subject of a

series of pending actions consolidated under the caption *In re 650 Fifth Ave. & Related

Properties*, Case No. 08 Civ. 10934 (KBF) (the "Consolidated Action").[3] *Id.* at ¶¶ 4, 35-43.

---

[2]  Each of the orders granting the Beer and/or Kirschenbaum Judgment Creditors' prior applications pursuant to 28 U.S.C. § 1610(c) are sealed due to confidential information subject to protective orders. Mechling Decl. at ¶¶ 17, 32.

[3]  The Consolidated Action consists of an *in rem* civil forfeiture proceeding brought against the Blocked Assets by the United States Government, captioned *United States of America v. All Right, Title, and Interest of Assa*

Most notable among the property interests comprising the Blocked Assets are: (1) an office building located at 650 Fifth Avenue, New York, New York; and (2) numerous deposit accounts containing rent and other proceeds deriving from that property and other real properties, all of which property interests are maintained by, or held in the name of garnishees, Assa Corporation ("Assa Corp."), Assa Company Limited ("Assa Co. Ltd."), Alavi Foundation (the "Foundation") and/or 650 Fifth Avenue Company (the "Fifth Avenue Company") (collectively, the "Alter-Ego Garnishees") on behalf of, and as alter-egos of, defendant-judgment debtor Iran.[4]   Mechling Decl. at ¶¶ 4, 35-43, 47-55.

Although the Alter-Ego Garnishees deny that they are controlled by Iran and that the Blocked Assets are beneficially owned by Iran, Petitioners' claims are supported by previous determinations of the Court in the Consolidated Action.  Indeed, by Opinion and Order, dated March 29, 2011, the Court (Holwell, J.) denied the Alter-Ego Garnishees' respective motions to dismiss the Amended Verified Complaint filed in the Government Action.  *See In re 650 Fifth Avenue and Related Properties*, 777 F.Supp.2d 529, 534 (S.D.N.Y. 2011).  Relying upon an extensive array of historical documents seized by the Federal Bureau of Investigation pursuant to

---

*Corporation, et al.*, 08 Civ. 10934 (KBF) (S.D.N.Y.) (the "Government Action"), as well as the following post-judgment enforcement proceedings commenced by other judgment creditors of Iran seeking to satisfy their judgments against the Blocked Assets: *Acosta, et al. v. Assa Corp., et al.*, No. 10 Civ. 02464; *Greenbaum, et al. v. Assa Corp., et al.*, No. 09 Civ. 00553, No. 09 Civ. 00564; *Miller, et al. v. Alavi Foundation, et al.*, No. 09 Civ. 00166 (RJH); *Rubin, et al. v. Alavi Foundation, et al.*, No. 09 Civ. 00165; *Peterson, et al. v. 650 Fifth Avenue Company, et al.*, No. 10 CV 1627 (collectively, the "Private Enforcement Actions").  Although, Petitioners previously filed notices of *lis pendens* with respect to the Blocked Assets and notices of claim to any distribution of forfeited properties in the Government Action, Petitioners are not yet parties to the Consolidated Action.  However, they intend to file a related action or otherwise join the Consolidated Action upon perfecting their claims to the Blocked Assets by execution and levy.

[4]   The Fifth Avenue Company is a New York partnership, the member partners of which are the Foundation and Assa Corp.  Assa Corp. is a New York corporation wholly owned by Assa Co. Ltd., a corporation domiciled in Jersey, Channel Islands, which itself is wholly owned by Bank Melli, a wholly-owned and controlled instrumentality of Iran.  Mechling Decl. ¶ 37; 31 C.F.R. § 560, App. A; *In re 650 Fifth Ave.*, 2012 WL 3070028 at *12, 15.  The United States Treasury Department's Office of Foreign Assets Control ("OFAC") identified Assa Corp. and Assa Co. Ltd. as front companies created and controlled by Iran for purposes of holding Iran's interest in the Blocked Assets.  *See In re 650 Fifth Ave.*, 2012 WL 3070028 at *12, 15.

search warrants executed against, *inter alia*, the Alter-Ego Garnishees, which documents were extensively quoted and referenced in the Government's Amended Verified Complaint, the Court determined that the Government had sufficiently alleged that Iran controls the Alter-Ego Garnishees and that the Alter-Ego Garnishees provided numerous illegal services to Iran in conjunction with the Blocked Assets, *including the Alter-Ego Garnishees' concealment of Iran's beneficial ownership of the Blocked Assets from judgment creditors such as Petitioners.* *See id.*

More recently, by Opinion and Order, dated July 27, 2012, the Court (Forrest, J.) denied the Foundation's and Fifth Avenue Company's joint motion to dismiss the Private Enforcement Actions against the Alter-Ego Garnishees. *See In re 650 Fifth Ave. & Related Properties*, 08 Civ. 10934 (KBF), 2012 WL 3070028 at *3, 11-12, 15-17 (S.D.N.Y. July 27, 2012) (the "July 2012 Opinion and Order"). Again referring to the historical documents quoted in the Government's amended civil forfeiture complaint, as incorporated by reference in the complaints filed in the Private Enforcement Actions, the Court held that such documents "demonstrate a robust factual basis to find, *inter alia*, that . . . [the Foundation and Fifth Avenue Company] 'are' in fact, 'Iran,' or are legally 'alter egos' or 'organs' of Iran." *Id.* at *3.[5]  Accordingly, the Court held that the judgment creditor-plaintiffs in the Private Enforcement Actions – who stand in shoes identical to those of Petitioners – properly and sufficiently stated a claim, pursuant to § 201 of TRIA (codified as a note to 28 U.S.C. § 1610), for turnover of the Blocked Assets in satisfaction of their respective judgments against Iran. *See id.* at *17; *see also Weinstein v.*

---

[5]  There is no dispute that Assa Corp. and Assa Co. Ltd. are front companies for the Iranian government, created and controlled by Bank Melli. *See In re 650 Fifth Ave.*, 2012 WL 3070028 at *15; Alavi Foundation's and 650 Fifth Avenue Company's Mem. Supp. Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt No. 196 July 7, 2011) at 16.  For that reason, none of the Alter-Ego Garnishees, including Assa Corp. and Assa Co. Ltd., have moved to dismiss any of the Private Enforcement Actions against the Assa entities. *See* Alavi Foundation's and 650 Fifth Avenue Company's Mem. Supp. Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim and Motion to Quash (Dkt no. 251 April 27, 2012) at 1 n.1.

*Islamic Republic of Iran*, 609 F.3d 43, 48-9 (2d Cir. 2010); *Weininger v. Castro*, 462 F.Supp.2d 457, 477 (S.D.N.Y. 2006).

## ARGUMENT

## PETITIONERS ARE ENTITLED TO AN ORDER PURSUANT TO 28 U.S.C. § 1610(c) AUTHORIZING PETITIONERS TO EXECUTE AGAINST THE BLOCKED ASSETS

### A. The Blocked Assets Are Subject to Execution Pursuant to 28 U.S.C. § 1610, Including § 201 of the Terrorism Risk Insurance Act of 2002

The Court's July 2012 Opinion and Order holds that the judgment creditor-plaintiffs therein had properly and sufficiently stated a claim, pursuant to § 201 of TRIA, for turnover of the Blocked Assets in satisfaction of those plaintiffs' respective judgments against Iran. *See In re 650 Fifth Ave.*, 2012 WL 3070028 at *3, 11-12, 15-17. Such determination applies with equal, if not greater, force to Petitioners' claims to the Blocked Assets.

Section 201(a) of TRIA provides in relevant part:

> Notwithstanding any other provision of law . . . in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605A or 1605(a)(7) (as such section was in effect on January 27, 2008) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 (2002), § 201(a), codified at 28 U.S.C. § 1610 note, as amended by § 502(e)(2) of the Iran Threat Reduction and Syria Human Rights Act of 2012, Pub. L. No. 112-158, 126 Stat. 1214 (2012), codified at 22 U.S.C. § 8701, *et seq.*

1.    Petitioners Possess Judgments Against Iran, a Terrorist Party,
on Claims Based Upon Acts of Terrorism and for Which Iran
Is Not Immune Pursuant to  28 U.S.C. §§ 1605(a)(7) and 1605A

In their underlying actions, Petitioners were awarded judgments against Iran, a

designated terrorist party, pursuant to 28 U.S.C. §§ 1605(a)(7) and 1605A on claims based upon

acts of terrorism and for which Iran was, and is, not immune.[6]  Mechling Decl. at ¶¶ 2-3, 5-6, 9-

10, 20-21, 24-25, Exs. 1, 2, 3, 9, 10, 11.

2.    Petitioners Seek "Blocked Assets" Within the Meaning of TRIA

Moreover, the Blocked Assets against which Petitioners now seek to execute are

"blocked assets" within the meaning of § 201 of TRIA, which defines that term, in pertinent part,

as "any asset seized or frozen by the United States under section 5(b) of the Trading With the

Enemy Act or under sections 202 and 203 of the International Emergency Economic Powers

Act . . . ." TRIA, § 201(d)(2) (internal citations omitted); *see In re 650 Fifth Ave. & Related

Properties*, 2012 WL 3070028 at *11n.10.  As discussed by the Court in the July 2012 Opinion

and Order, on February 5, 2012, President Obama exercised his authority under the Constitution

and the laws of the United States of America, including the International Emergency Economic

Powers Act ("IEEPA"), and issued Executive Order 13599, which orders, *inter alia*, that:

> All property and interests in property of the Government of Iran,
> including the Central Bank of Iran, that are in the United States,
> that hereafter come within the United States, or that are of
> hereafter come within the possession or control of any United
> States person, including any foreign branch, *are blocked* and may
> not be transferred, paid, exported, withdrawn, or otherwise dealt in.

Executive Order 13599, 77 Fed. Reg. 26 (Feb. 6, 2012) ("E.O. 13599"), § 1(a) (emphasis added).

Significantly, E.O. 13599 defines the "Government of Iran" as "any political subdivision,

---

[6]   It is indisputable that Iran has, since 1984, been designated by the United States Government as an official "state sponsor of terrorism," a designation that places Iran within the definition of a "terrorist party" found in § 201(d)(4) of TRIA. *See also In re 650 Fifth Ave.*, 2012 WL 3070028 at *11.

-11-

agency, or instrumentality thereof . . . *and any [individual or entity] owned or controlled by, or acting for or on behalf of, the Government of Iran.*" E.O. 13599, § 7(d) (emphasis added); *see In re 650 Fifth Ave.*, 2012 WL 3070028 at *11-12.

As amply supported by the historical documents relied upon by the Court in the Consolidated Action and incorporated herein by reference in the supporting Mechling Declaration, the Alter-Ego Garnishees easily fit within E.O. 13599's definition of Iran. *See In re 650 Fifth Ave.*, 2012 WL 3070028 at *11-12. Additionally, the Alter-Ego Garnishees qualify as Iran under accepted veil-piercing principles of equity and United States common law that apply to fraudulent alter-ego relationships such as those presented here. *See id.* at *16. As such, all property and interests in property of the Alter-Ego Garnishees that are in the United States, including the Blocked Assets, are blocked pursuant to E.O. 13599 and thereby subject to execution in satisfaction of Petitioners' judgments against Iran pursuant to § 201 of TRIA.

3.    Petitioners Seek the Blocked Assets "of" Iran Within the Meaning of TRIA

As indicated on its face, E.O. 13599 was issued in response to "the deceptive practices of the Central Bank of Iran and other Iranian banks to conceal transactions of sanctioned parties, the deficiencies in Iran's anti-money laundering regime and the weaknesses in its implementation, and the continuing unacceptable risk posed to the international financial system by Iran's activities . . . ." E.O. 13599, preamble. Indeed, Iran has long been a supporter of international terrorism and other illicit conduct and activities that threaten the safety and security of people all across the world. *See* Bureau of Counterterrorism, Office of the Coordinator for Counterterrorism, U.S. Dep't of State, *State Sponsors of Terrorism Overview (April 30, 2008), available at* http://www.state.gov/j/ct/rls/crt/2007/103711.htm (last visited Oct. 16, 2012) [hereinafter *State Sponsors of Terrorism*]; *In re 650 Fifth Ave., 2012 WL 3070028 at *11.* As a result, an embargo against Iran, prohibiting virtually all trade and investment activities between

-12-

Iran and the United States, has been in place for more than thirty years, and numerous other

sanctions programs designed, *inter alia*, to curb Iran's sponsorship of terrorist acts and terrorist

organizations have been implemented by the United States and other foreign nations. *See, e.g.,*

*Weinstein,* 609 F.3d at 48 ("Iran has been designated a terrorist party pursuant to section 6(j) of

the Export Administration Act of 1979, 50 U.S.C.App. § 2405(j), beginning January 19, 1984,

and therefore is a 'terrorist party' as defined by TRIA § 201(d)(4)." (internal citations omitted));

Iranian Transactions Regulations, 31 C.F.R. Part 560; *State Sponsors of Terrorism, supra.*

As reflected by the definition of "Government of Iran" contained in E.O. 13599, Iran also

has a long history of using corporate shells and other front companies to conduct business that it

is otherwise barred from conducting directly as a result of international sanctions regimes and

trade embargos. Pursuant to § 311 of the USA Patriot Act of 2001, Public Law 107-56, the

Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") formally

designated Iran as a jurisdiction of primary money laundering concern on November 18, 2011.

*See* Finding That the Islamic Republic of Iran Is a Jurisdiction of Primary Money Laundering

Concern, 76 Fed. Reg. 72756 (Nov. 25, 2011). Among other things, that designation was based

upon FinCEN findings that Iran "uses deceptive financial practices to facilitate illicit conduct

and evade sanctions," including what FinCEN described as a "well-established history of using

front companies and complex corporate ownership structures to disguise the involvement of

government entities known to be involved in Iranian proliferation activity when conducting

commercial transactions." *Id.* at 72761.

As recognized in the July 2012 Opinion and Order, Petitioners adequately demonstrate

that the Alter-Ego Garnishees are precisely the sort of front companies, acting for and on behalf

of Iran, to which FinCEN was referring in its November 2011 findings. Indeed, the historical

documents relied upon by the Court in the July 2012 Opinion and Order demonstrate, *inter alia*, that:

- The Foundation "was originally established by the government of Iran and all facts appear to indicate that it has been continuously operated as part of the Iranian government apparatus." *In re 650 Fifth Ave.*, 2012 WL 3070028 at *3.

- "Once the Foundation was established, the government of Iran, through its central bank, loaned to Bank Melli, which in turn loaned the Foundation, the funds to purchase the building located at 650 Fifth Avenue, New York, New York." *Id.*

- "Documents [] reveal [] facts regarding extensive and continuous connections between the Foundation, 650 Fifth Avenue, Bank Melli, the Assa Corp., Assa Co. Ltd. and the Iranian government." *Id.*

- "By the 1980s, [the Foundation] had incurred a tax liability relating to rental income from the 650 Fifth Avenue property. To avoid the tax, Iranian government officials and directors of [the Foundation] discussed various options. The plan that was ultimately adopted led to the creation of the 650 Fifth Avenue Company." *Id.* at 4.

- "According to the partnership agreement entered into between the Foundation and Bank Melli, it was agreed that the partnership would be called the 650 Fifth Avenue Company, that the Foundation would contribute the building at 650 Fifth Avenue, New York, New York, and that Assa Corp. would contribute capital." *Id.* at 5.

- The former president of the Foundation, warned of "the dangers of an open connection between the Foundation and the Islamic Republic of Iran:

  > I and members of the Foundation's Board of Trustees have frequently signed affidavits addressed to American authorities . . . stating that the Foundation is independent and devoid of any connection to the Government of Iran and the Iranian Government's qualified authorities. If this Issue, which has created a connection between the Foundation and the Government of Iran and is surely known to the American authorities, is deemed a violation and causes actions to be taken against the Foundation, I and the other members of the Board of Trustees . . . will be culpable of a heavy offence [*sic*]. Therefore a solution needs to be thought of for us. *Id.* at 7.

- "There were numerous meetings at which individuals from the Foundation and employees from Bank Melli met to discuss business associated with the Foundation, the building at 650 Fifth Avenue, distributions to the Assa Corp. and other matters." *Id.*

- "In 2004, the Iranian Ambassador to the United Nations and the Finance Minister for Iran met to discuss the resolution of a lawsuit brought against the Foundation." *Id.*

- "Starting in approximately 2007, the Iranian Ambassador to the United Nations would meet with individuals from the Foundation in a closed room in Queens or at one of the Ambassador's residences. At those meetings, issues with respect to management of the building at 650 Fifth Avenue and the charitable activities of the Foundation were discussed." *Id.*

- "[T]here was an ongoing attempt to deny any relationship between the Foundation and the Government of Iran in order to avoid paying civil judgments obtained against Iran in courts in the United States." *Id.* at 8.

Moreover, on December 17, 2008, and pursuant to Executive Order 13382 of June 28, 2005 ("E.O. 13382"), OFAC, in consultation with the Department of State and other government agencies, officially designated Assa Corp. and Assa Co. Ltd. as proliferators of weapons of mass destruction and front companies created and controlled by Bank Melli (an admitted instrumentality of Iran that has, itself, been designated as a proliferator of weapons of mass destruction under E.O. 13382), for purposes of holding Bank Melli's (*i.e.*, Iran's) interest in the Blocked Assets in partnership with the Foundation through the Fifth Avenue Company. *See* E.O. 13382, 70 Fed. Reg. 126 (June 28, 2005); 73 Fed. Reg. 251 (December 31, 2008). As a result, all of Assa Corp.'s and Assa Co. Ltd.'s assets in the United States, *including Assa Corp.'s 40% reported interest in the Blocked Assets*, were and are blocked.[7]

Although the Foundation and the Fifth Avenue Company have not been designated by OFAC as proliferators of mass destruction under E.O. 13382, the Treasury Department has nevertheless formally acknowledged in its Twentieth Annual Report to the Congress on Assets in the United States Relating to Terrorist Countries and International Terrorism Program Designees,

---

[7] Significantly, the Alter-Ego Garnishees do not dispute that all of Assa Corp.'s and Assa Co. Ltd.'s property in the United States, including Assa Corp.'s interest in the Blocked Assets, is blocked. *See* Alavi Foundation's and 650 Fifth Avenue Company's Mem. Supp. Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt No. 196 July 7, 2011) at 16 ("*[T]here can be no dispute* that [Assa Corp.'s and Assa Co. Ltd.'s] 40% interest . . . is a 'blocked asset' under TRIA." (emphasis added)).

that the Department of Justice "is seeking to forfeit the building and other specified property of

the Foundation, Assa Corp. and Assa Co. Ltd. as entities controlled by, and providing services

to, the Government of Iran." OFAC Terrorist Assets Report for the Calendar Year 2011, note

13. Significantly, E.O. 13599 stands in contrast to E.O. 13382 in that the former does not require

an entity to be singled out and formally designated in order for its assets to be blocked; rather,

E.O. 13599 blocks all property and interests in property of the Government of Iran, which

explicitly includes all property and interests in property of "*any [individual or entity] owned or

controlled by, or acting for or on behalf of, the Government of Iran.*" E.O. 13599, §§ 1(a) and

7(d) (emphasis added); *see In re 650 Fifth Ave. & Related Properties*, 2012 WL 3070028 at *11-

12; *Frequently Asked Questions and Answers*, U.S. Dep't of Treasury,

http://www.treasury.gov/resource-center/faqs/Sanctions/Pages/answer.aspx (last visited Oct. 16,

2012) ("E.O. 13599 blocks the property and interests in property of any individual or entity that

comes within its definition of the term 'Government of Iran' regardless of whether it is listed on

the SDN List ...").

Accordingly, the Blocked Assets constitute blocked assets of Iran within the meaning

§ 201 of TRIA and, hence, are subject to execution thereunder in satisfaction of Petitioners'

judgments against Iran.

### B. A Reasonable Period of Time Has Elapsed Following Entry of Petitioners' Judgments and the Giving of Notice Required Under 28 U.S.C. § 1608(e)

Section 1610(c) of the FSIA requires Petitioners to allow a "reasonable period of time" to

elapse following entry of their judgments and the giving of any notice required under § 1608(e)

before seeking to execute upon Iranian assets in satisfaction of such judgments. As

demonstrated above, this Court (Wood, J.) previously determined this condition to have been

satisfied with respect to Petitioners' judgments against Iran. Mechling Decl. at ¶¶ 16, 31.    To

-16-

date, almost a full year has elapsed since Iran received notice of entry of Petitioners' judgments, which period of time more than sufficiently satisfies the requirements of § 1610(c). *See, e.g.*, *Gadsby & Hannah v. Socialist Republic of Romania*, 698 F. Supp. 483, 486 (S.D.N.Y. 1988) (holding that two months constitutes a "reasonable period of time" under § 1610(c)); *Ferrostaal Metals v. S.S. Lash Pacifico*, 652 F. Supp. 420, 423 (S.D.N.Y. 1987) (holding that three months constitutes reasonable time under § 1610(c)).

This is especially true where, as here, Iran has not taken, and likely will not take, any steps to voluntarily satisfy Petitioners' judgments, and – as demonstrated above – has in fact taken steps to avoid paying such judgments. *See, e.g.*, *Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d 64, 67 (D.D.C. 2001) ("[A] court's determination of 'reasonable time' should be informed by an examination of . . . evidence that the foreign state is actively taking steps to pay the judgment, and evidence that the foreign state is attempting to evade payment of the judgment."), *citing* H.R. Rep. 1487, 94th Cong., 2d Sess. 1, 30 (1976), *reprinted in* 1976 U.S. Code Cong. & Admin. News 6604, 6629. Indeed, Iran has a long history of defaulting in terrorism-based litigation and refusing to satisfy or even acknowledge judgments rendered in such cases.[8] *See CRS Report*, *supra*, pg. 4 at 70-72 (indicating that, as of 2008, Iran owed nearly $6.5 billion in outstanding damages, exclusive of post-judgment interest). Upon information and belief, to date, Iran has refused to satisfy, or even acknowledge, any of the judgments entered in the above actions. Mechling Decl. at ¶¶ 18-19, 33-34, 44-46.

---

[8] Iran is a defendant in more terrorism litigation than any other state sponsor of terrorism; in addition to *Beer I* and *II* and *Kirschenbaum I* and *II*, such suits include, but are not limited to: *Bakhtiar v. Islamic Republic of Iran*, Civ. Act. No. 02-00092 (HHK) (D.D.C. 2008); *Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39 (D.D.C. 2008); *Bennett v. Islamic Republic of Iran*, 507 F. Supp. 2d 117 (D.D.C. 2007); *Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 74 (D.D.C. 2006); *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258 (D.D.C. 2003); *Daliberti v. Republic of Iran*, 146 F. Supp. 2d 19 (D.D.C. 2001); *Haim v. Islamic Republic of Iran*, 425 F. Supp. 2d 56 (D.D.C. 2006); *Holland v. Islamic Republic of Iran*, 496 F. Supp. 2d 1 (D.D.C. 2005); *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25 (D.D.C. 2007); and *Reiger v. Islamic Republic of Iran*, 281 F. Supp. 2d 87 (D.D.C. 2003), among other cases. *See CRS Report*, *supra*, pg. 4 at 70-72.

Accordingly, Petitioners respectfully submit that a reasonable period of time has elapsed

within the meaning of 28 U.S.C. § 1610(c).

## CONCLUSION

For all of the foregoing reasons, Petitioners respectfully request that the Court enter the

accompanying [Proposed] Order (i) declaring that a reasonable period of time has elapsed

between entry of Petitioners' judgments and the giving of notice required under 28 U.S.C.

§ 1608(e) and the date of this Court's order; (ii) authorizing Petitioners to execute against the

Blocked Assets in satisfaction of their respective judgments against Iran; (iii) directing the Clerk

of Court to issue writs of execution in each of the above-captioned actions, consistent with the

terms of the Courts' Order; and (iv) granting any such further and additional relief that this Court

may deem appropriate.


Dated:    New York, New York          STROOCK & STROOCK & LAVAN LLP
          October 23, 2012

                                      By: _____
                                          Curtis C. Mechling
                                          James L. Bernard
                                          Benjamin Weathers-Lowin

                                      180 Maiden Lane
                                      New York NY 10038
                                      (212) 806-5400

                                      *Attorneys for Petitioners*