**Patterson Belknap Webb & Tyler** LLP

1133 Avenue of the Americas   New York, NY 10036-6710   212.336.2000   fax 212.336.2222   www.pbwt.com

April 19, 2013

By E-mail Attachment and Hand Delivery

Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 730
New York, New York 10007

Daniel S. Ruzumna
Partner
(212) 336-2034
Direct Fax (212) 336-1205
druzumna@pbwt.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/22/13

      Re:    In re 650 Fifth Avenue and Related Properties,
              08 Civ. 10934 (KBF)

Dear Judge Forrest:

        We respectfully submit this letter on behalf of the Alavi Foundation (the "Foundation") and 650 Fifth Avenue Company (the "Partnership," collectively "Claimants") in response to the Government's April 15, 2013 letter concerning the application of the attorney-client privilege and work-product protections to Claimants' communications with counsel. For the reasons described below, the Court should reject the Government's attempt to invade Claimants' attorney-client privilege and work product protections based on unsubstantiated claims that the crime-fraud exception applies, and should deny the Government's request for an order directing the Foundation to supplement its discovery privilege log, which is not, in fact, the document the Government attached to its letter.

Preliminary Statement

        The Government's April 15, 2013 letter takes the remarkable position that, based on allegations of criminal conduct in a civil complaint, "any communications between the Foundation or Partnership and their counsel" are not privileged based on the crime-fraud exception to the attorney-client privilege and work product doctrine. The Government does not identify a single communication that supposedly furthered a crime or fraud, nor does it offer any evidence suggesting that an attorney actually gave advice that furthered a crime or fraud. Instead, it simply reiterates allegations in the Amended Forfeiture Complaint and then blithely asserts that every single communication between the Foundation or the Partnership and counsel was "in furtherance of these fraudulent schemes." (4/15/13 Letter of M. Lockard to Hon. K. Forrest ("Gvt. Ltr.") at 6). Such non-particularized, blanket assertions are insufficient to meet the Government's evidentiary burden to prove that communications between Claimants and their counsel are subject to the crime-fraud exception. Indeed, to hold otherwise would allow any civil party to defeat its adversary's privilege claims simply by asserting that the opposing party committed a crime.

Hon. Katherine B. Forrest
April 19, 2013
Page 2

        The Government treats the crime-fraud exception as a procedural device whose mere invocation taints all attorney-client communications of another party and shifts the onus on the responding party to disprove its application.  But the application of the exception to any particular communication cannot merely be assumed based on untested allegations in a complaint.  As set forth below, it must be *proven*, as to *each challenged communication*, by use of extrinsic evidence demonstrating that the particular communication was in furtherance of a crime or fraud.  Contrary to the Government's bizarre and inaccurate representation in its letter, Claimants produced two detailed privilege logs (one for documents in the Foundation's possession, and one for documents seized by the Government) setting out the bases for their assertions of privilege and/or work product protection as to each withheld document.  (*See* Ex. A.).  It is the Government's burden to identify specific communications, if any, from those logs that it believes fall within the exception, and to prove the application of the exception as to each communication through the use of relevant, particularized evidence.  The Government's contrary assertion—which essentially asks this Court to apply a uniform presumption of impropriety to every one of Claimants' communications with counsel, and then force Claimants to disprove that presumption—stands the law on its head, and amounts to a fishing expedition for evidence contained in privileged documents.

        The Government presumably understands what the law requires, and why their unsupported blanket assertion is misconceived and insufficient to defeat Claimants' attorney-client and work product protections.  We also note that the Government has never before claimed, to the Court or to Claimants, that the Foundation and Partnership's attorney-client and work product materials are unprotected, much less subject to the crime-fraud exception.  Given the extensive history of the Government's violations of Claimants' privileges, summarized below, the Government's sudden, belated, and spurious assertion of crime-fraud looks like a *post hoc* attempt to justify its earlier wholesale privilege invasions.  To the extent the Government's letter is intended to stake out a position that the Government will use in the future to defend its prior actions, this Court should take notice, as set forth below, of the Government's history of not only acknowledging the existence and application of Claimants' privileges, but also of routinely and blatantly violating them.

        With respect to the "Additional Issues" raised in its letter, the Government claims that the Foundation and Partnership provided an insufficient privilege log "[p]rior to the formal production of discovery in this matter" and requests an order directing them to supplement it.  Aside from the fact that the *Government has not produced a privilege log of any kind in this matter*, the Government completely ignores the detailed privilege logs Claimants provided as part of discovery nearly one year ago.  As stated in correspondence with the Government at the time of its delivery, the pre-discovery log referenced in the Government's letter was solely intended to assist the Government in its review of evidence seized from the Foundation in December 2008 and to ensure that the Foundation's privileges were protected during the course of that review.  As demonstrated below, however, it is clear that those privileges were not respected.

Hon. Katherine B. Forrest
April 19, 2013
Page 3

## History of Privilege Assertions and Abuse of Claimants' Privileges

On December 18, 2008, the Federal Bureau of Investigation ("FBI") executed a warrant to search the Foundation's offices and seized virtually all of the Foundation's hard-copy and electronic files—some 200 boxes of materials, computers, hard drives, and servers. As would be expected from such an indiscriminate sweep, among the records seized were documents protected by the attorney-client privilege and work-product protections, including documents whose privileged status was obvious from their face, such as letters to the Foundation's directors and officers printed on law firm letterhead and clearly labeled with the legend "*PRIVILEGED AND CONFIDENTIAL ATTORNEY WORK PRODUCT.*"[1]

In the months after the search, the Foundation repeatedly voiced its concern to the Government that many of the documents in the Government's possession were privileged and should not be reviewed. Nonetheless, it quickly became apparent that the FBI was ignoring the Foundation's assertions and reviewing privileged documents. For example, on March 11, 2009, nearly three months after the documents were seized, the Government permitted the Foundation's lawyers to come to the U.S. Attorney's Office in Manhattan and review five boxes of what the Government characterized as the "most relevant documents" seized during the search. Our review of these documents demonstrated that the Government had disregarded the Foundation's attorney-client privilege, as a number of these "most relevant documents" revealed *on their face* their privileged nature. Among the documents were letters and memoranda from Patterson Belknap Webb & Tyler attorneys printed on firm letterhead and labeled "PRIVILEGED AND CONFIDENTIAL"; a letter from the law firm of Berliner & Maloney on firm letterhead labeled "PERSONAL AND CONFIDENTIAL"; a letter from the law offices of Kaplan, Russein & Vecchi, labeled "CONFIDENTIAL / ATTORNEY CLIENT PRIVILEGED"; and other similar communications.

A month and a half later, on April 22, 2009, the Government provided CDs containing electronic copies of additional documents that the FBI had reviewed, which were said to represent approximately 5% to 10% of the total seized materials. Numerous blatantly privileged communications were also included in these materials, with many containing the same bold "PRIVILEGED AND CONFIDENTIAL" legend clearly designating the communications as privileged. In June 2009, the Foundation informed the Government that these CDs included privileged documents, and again expressed our concern that the FBI was violating the Foundation's privilege. (Ex. B, 6/22/09 e-mail from D. Ruzumna to J. Cronan.)

Following these incidents, the Foundation sent numerous letters and e-mails to the Government demanding that they cease reviewing privileged records and start taking adequate steps to safeguard the Foundation's privilege by, among other things, establishing a dedicated "taint team" to identify and segregate privileged materials prior to substantive FBI review. (*See*,

---

[1] Privileged documents referenced in this section are not attached in order to protect the Foundation's attorney-client privilege. To the extent all relevant privileges can be preserved, Claimants are willing to submit the referenced documents for an *in camera* review.

Hon. Katherine B. Forrest
April 19, 2013
Page 4

*e.g.*, Ex. B; Ex. C, 5/8/09 Ltr from D. Ruzumna to D. Liebowitz, at 2.) These notifications apparently fell on deaf ears, however, as our review of returned documents continued to demonstrate that the FBI was substantively reviewing obviously privileged documents. For example, an October 2010 production of 87 boxes that the Government had reviewed included privileged documents scattered throughout, a number with Post-it notes containing FBI agents' handwritten notes directly affixed to facially privileged documents.

Moreover, it became apparent that despite repeated entreaties and warnings from the Foundation, the FBI was sharing privileged documents with other federal agencies. On January 26, 2010, we provided the Government—at its express request—with a log identifying privileged documents that that the Government had returned to the Claimants, including privileged material on the five CDs that the Government returned on April 22, 2009. (*See* Ex. D, 8/23/09 e-mail from J. Cronan to D. Ruzumna; Ex. E, 1/26/10 e-mail from D. Ruzumna to H. Chernoff; Gvt. Ltr. Ex. B.) The purpose of this log was to allow a Government taint team to identify and segregate privileged documents before further review or dissemination—in other words, the Foundation essentially performed for the Government a task that it should have already been performing as a matter of course.[2] (*Id*.) The Government averred that it "has not looked at these [five CDs] because of possible privilege concerns you have expressed, and therefore don't want to be going through them without guidance from you first." (Ex. D.) But despite these assurances, counsel for Claimants subsequently discovered through a Freedom of Information Act Request to the Department of Treasury that the Government had ignored the log and simply copied and turned over all five of the April 22, 2009 CDs to the Department of Treasury, without removing or redacting privileged documents. (*See*, *e.g*., Ex. F, 5/15/12 Ltr from K. Adler to D. Argall.)

Although the Government has routinely violated Claimants' privileges by reviewing privileged documents, it has *never*, until now, claimed that Claimants' privileges do not fully cover communications between them and their lawyers. To the contrary, the Government has acknowledged that attorney communications are privileged and, following multiple complaints and reminders from the Foundation, has at times identified and segregated privileged material. For example, in December 2009, the Government affirmatively requested that the Foundation redact privileged materials from production CDs so that the Government could produce those CDs to an individual litigant. (Ex. G, 12/16/09 e-mail from H. Chernoff to D. Ruzumna.) In July 2010, the Government made a production that it described as comprising "85 regular boxes, 1 box containing all privileged materials (opened, identified as such, and re-sealed in its original container), and 1 large box of assorted privileged materials which were

---

[2] The Government misleadingly suggests that the January 26, 2010 log is the only privilege log that the Foundation has ever offered, and that Claimants cannot support any assertions of privilege due to the lack of explanatory detail in this log. As described below, the January 2010 log was not a discovery log; its purpose was simply to allow a Government taint team to readily identify privileged documents during the course of its review. Claimants have, as part of the formal discovery process, given the Government two separate, fully detailed privilege logs that are entirely adequate to support their privilege assertions. (*See* Ex. A). The Government's complaints about the inadequacy of our "log" are particularly ironic given that the Government has never provided us with a privilege log of its own, despite repeated requests.

Hon. Katherine B. Forrest
April 19, 2013
Page 5

identified and segregated during the final review process." (Ex. H, 7/27/10 e-mail from G. Alexander to K. Caner.) And in November 2011, the Government agreed that it would segregate privileged documents, based on the very same January 2010 log that it now complains is inadequate. (Ex. I, 11/18/2011 e-mail from J. Cowley to K. Caner). The Government has never taken the position that it was appropriate for them to review privileged documents, despite the FBI having done so, and has never, until now, asserted that the crime-fraud exception applies to Claimants' attorney-client communications or work product.

## Discussion

I.  **The Government Has Not Demonstrated that Any of Claimants' Privileged Communications Were in Furtherance of a Crime or Fraud**

The Government claims that the Foundation's communications with its attorneys and its attorneys' work product are not protected by privilege because they fall within the crime-fraud exception. The crime-fraud exception to the attorney-client and work-product privileges "removes the privilege from those attorney-client communications that are related to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *United States v. Jacobs*, 117 F.3d 82, 88 (2d Cir. 1997) (quotation marks and citation omitted); *see also In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1038-39 (2d Cir. 1984) ("*Marc Rich*"). The proponent of the exception—here, the Government—has the burden of demonstrating that the exception applies to any particular communication or set of communications. *Jacobs*, 117 F.3d at 87. The court may apply the crime-fraud exception only if the Government shows probable cause to believe (1) that the Foundation was engaged in some form of fraud, and (2) that the Foundation's communications with its attorneys were intended to further that fraud. *Marc Rich*, 731 F.2d at 1039. The Government has not come close to making either showing.

First, the Government has not demonstrated the existence of an attempted crime or fraud. The only "evidence" that the Government offers to support its assertion that the Foundation was engaged in some form of fraud are citations back to its own complaint. The Complaint in turn quotes notes and letters from former Foundation board members establishing only that the Foundation (1) was concerned about how the IRS would view a major transaction; (2) later became concerned about the potential for the Iranian United Nations Ambassador to interfere in the activities of the Foundation; and (3) more than a decade later, became concerned about its partnership with Assa. This is, at best, evidence that the Foundation was concerned about how the Government might view some aspects of its operations and transactions. Having such a concern is not fraud, and it is unclear what the Government believes the fraud was—*i.e.*, the Government does not specify what facts Foundation officers purportedly were attempting to hide from the Government, or how and when they attempted to do so. If the Government cannot even specify what the fraud was, then it cannot not offer evidence in support of its argument—and it has failed to meet its burden of showing that the crime-fraud exception applies.

Hon. Katherine B. Forrest
April 19, 2013
Page 6

   Second, the Government has not demonstrated, as it must, that any particular attorney-client communication—let alone *all* of them—was made in furtherance of a crime or fraud. For the crime-fraud exception to apply, the communications at issue "must actually *have been made with an intent to further an unlawful act*." *Jacobs*, 117 F.3d at 88 (quoting *United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989) (Ruth Bader Ginsburg, J)) (emphasis in *Jacobs*); *see also Marc Rich*, 731 F.2d at 1039 (crime or fraud must "have been the objective of the client's communication."). Accordingly, "the crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud." *United States v. Roe*, 68 F.3d 38, 40 (2d Cir. 1995). Rather, the privilege will only be set aside if the Court determines "that the client communication or attorney work product in question was *itself* was in furtherance of the crime or fraud . . . . [and] that the particular communication with counsel or attorney work product was intended in some way to facilitate or to conceal the criminal activity." *Id.* (citation and parenthetical omitted) (emphasis in original). But the Government offers no evidence that any particular communication or instruction from the Foundation to its attorneys was in furtherance of crime or fraud, or motivated by an intent to conceal or facilitate any purported fraud. Indeed, the Government does not even make an argument as to any particular communication. Instead, it cavalierly asserts that *all* of the Foundation's communications with its attorneys fall within the crime-fraud exception—an assertion whose acceptance would require the Court to make a global determination that that each time a Foundation representative spoke to the Foundation's lawyers, on any subject, the representative was actually intending to further a fraud. Such a finding, covering years of communications with multiple lawyers, from entities with significant assets and charitable activities, is implausible at best. In the absence of any evidence concerning the purpose or content of any specific communication or set of communications, the Government's argument passes from weak to spurious.

   Although in some circumstances an *in camera* review of disputed material is appropriate before a court rules on whether the material is subject to the crime-fraud exception, *see, e.g.*, *John Doe v. United States*, 13 F.3d 633, 636 (2d Cir. 1994), the Government must first make a factual showing sufficient to "support a good faith belief by a reasonable person . . . that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies" *Id.* (quoting *United States v. Zolin*, 491 U.S. 554, 572 (1989)). To make this initial showing, the Government must offer evidence—outside of the communications themselves, which remain presumptively privileged—of both a fraud on the part of the Foundation, and an intent to use communication with attorneys to further that fraud. Again, the Government has offered no evidence—and therefore cannot have made a factual showing—to support a good-faith belief that Foundation officers had any particular intent when communicating with their attorneys. Absent such a showing, even an *in camera* inspection of the privileged materials would be inappropriate at this time.

   Accordingly, for all of the reasons described above, the Government's objection to Claimants' assertion of privilege and work product protection and its request for the Court to apply the crime-fraud exception to deny these protections should be denied.

Hon. Katherine B. Forrest
April 19, 2013
Page 7

## II. The Court Should Not Order Claimants to Supplement Their Privilege Logs; Rather, It Should Order the Government's Claims of Privilege Waived for Failure to Provide *Any* Log

In a show of incredible legal *chutzpah*, the Government's April 15, 2013 letter also complains of purported "deficiencies" in the Foundation and the Partnership's pre-discovery privilege log, without mentioning the facts that (1) Claimants provided two post-discovery privilege logs that provide all necessary and appropriate information to allow the Government to evaluate their assertions of privilege to specific documents; and (2) the Government itself has not provided a privilege log of any kind in this matter. The Government's request for an order requiring Claimants to supplement their privilege logs should be denied, and instead, the Court should deem the Government's privileges waived for its failure to produce a log. At a minimum, the Court should require the Government to produce a privilege log for all withheld documents on the basis of any allegedly applicable privilege with the same degree of detail demanded in the Government's April 15, 2013 letter.

As described above, the FBI's search and seizure of virtually all of the Foundation and the Partnership's hard copy and electronic records resulted in the Government gaining possession of hundreds of documents protected by Claimants' attorney-client privilege and attorney work product protections. Claimants' counsel almost immediately notified the Government of this issue and requested that steps to be taken to respect Claimants' privileges. In the ensuing months, however, it became clear that the FBI was not abiding by the Government's agreement to protect the Foundation's and the Partnership's privileges. Indeed, the Government's return of documents to the Foundation demonstrated that even the most obviously privileged documents—*e.g.*, those on law firm letterhead and labeled "attorney-client privileged" in bold print—were being reviewed by the primary case agents. Complaints about the conduct were either ignored or not met with a response.

On January 26, 2010, at the Government's request, counsel for Claimants gave the Government a log identifying privileged documents that were included in the materials that the Government had returned to Claimants up to that date. (Ex. E; Gvt. Ltr Ex. B.) The log was not intended as a formal discovery privilege log; rather, it was intended to allow a Government taint team to identify, segregate, and verify privileged documents before their review or dissemination. The Government complains that this pre-discovery log is "insufficient for discovery purposes because it does not provide sufficient information demonstrating the basis for the invocation of the applicable privilege." (Gvt. Ltr. at 7-8). But there was no reason to include such information in that *pre-discovery* log—and the Government did not request it—because a Government taint team was purportedly segregating and verifying the privileged nature of the documents.

Claimants' January 26, 2010 log is not the only privilege log that they have produced in this case. On August 3, 2012, as part of the formal discovery process, Claimants produced to the Government and many of the private plaintiffs two separate, fully detailed privilege logs that are entirely adequate to support their privilege assertions. (*See* Ex. A.) There

Hon. Katherine B. Forrest
April 19, 2013
Page 8

has been and can be no reasonable complaint regarding the sufficiency of Claimants' *discovery* privilege logs. Accordingly, the Court should not require supplementation.

On the other hand, the Government has still not provided a privilege log of its own, despite its rampant assertions of the attorney-client, law enforcement, and deliberative process privileges and its claims of work product protection. Though the Government has used generic "deletion codes" on documents produced with redactions, these codes do not furnish sufficient information to allow Claimants to evaluate whether the Government's claims of privilege are valid, and do not cover the estimated 85% of the Government's investigative documents that are purportedly classified and not being produced at all.

Adding to its egregious discovery conduct, the Government *still* has not produced a witness list, even though such a list was required to be provided by April 1, 2013 and the Court ordered that "any witness who is called by the government at trial must be disclosed by April 1, 2013, *except for extremely good cause shown*." (2/01/13 Tr. 68 (emphasis added); *see also* 2/01/13 Order). The Government's cavalier attitude to the Court's orders and the rules governing discovery should not be tolerated. We respectfully submit that the Court should order that the Government's privileges and work product protection have been waived, *see Dey, L.P. v. Sepracor, Inc.*, 07-CV-2353 (JGK) (RLE), 2010 U.S. Dist. LEXIS 130330, at *6 (S.D.N.Y. Dec. 8, 2010), and should order the Government to explain its "extremely good cause" if it seeks to call witnesses at trial.

At a minimum, with respect to its assertions of privilege, the Government should be required to provide a log for all documents withheld on the basis of attorney-client, law enforcement, or deliberative process privilege or work product protection so that Claimants, if appropriate, can challenge those designations. See Fed.R.Civ.P. 26(b)(5). Such a privilege log should separately itemize each withheld document and should meet the same standards that the Government set forth in its April 15, 2013 letter, *i.e.*, it should "provide sufficient information demonstrating the basis for the invocation of the applicable privilege . . . . with respect to the documents or excerpts with respect to which [it] claim[s] privilege." (Gvt. Ltr. 7-8).

Respectfully submitted,

/s/ *Daniel S. Ruzumna*
Daniel S. Ruzumna

cc:   Counsel of Record